[Crim. No. 7470. Second Dist., Div. Two. Apr. 24, 1961.]

THE PEOPLE, Respondent, v. THERESA JONES, Appellant.

Earl C. Broady and Robert Roberson for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant was charged with murdering her husband, LeRoy Jones. She was tried before a jury and found guilty of manslaughter. Her motion for a new trial was denied and she was sentenced to the state prison. She has appealed from the judgment and order denying her a new trial.

The homicide occurred in the evening of March 21, 1960, at the home of defendant and her husband. They were arguing for quite some time prior to the husband's leaving the house at 9 o'clock. Upon his return he and defendant resumed their argument. The deceased acted as if he had been drinking. He had something to eat from the coffee table while sitting on the couch in the livingroom. According to defendant's story, her husband cursed her and threatened to beat her when the children went to bed. Later he picked up a table knife, with which he had been eating, held it up and said, "I will throw this knife at you." Finally, he threatened to kill her. He stood up with the knife in his hand, raised it, and took some steps. At that point she turned to the buffet, which was near where she was sitting, and procured a .22 caliber pistol, purchased by her about six weeks previously, and shot into the ceiling. According to her testimony, she admonished her husband not to come upon her, but he kept advancing. She further testified, "I was afraid he was going to jump on me or kill me or beat me or something, and I just couldn't take no more beating." It was then that she shot him. There were two wounds, one above the waist on the left side of the body, the other in the upper portion of his back. There were also two holes in the ceiling of the livingroom that appeared to be bullet holes. He ran out of the house and was found lying on the porch steps of a neighbor. Defendant followed him. When she reached the deceased, there is testimony that she stated, "I ought to finish killing you."

There was testimony from a 12-year-old niece of the decedent, who was visiting in the home at the time, that the deceased did not make any movement toward the defendant prior to the shooting. There was also testimony that earlier in the year defendant had told her husband's sister that she was going to kill her husband. This was denied by the defend-

ant. However, she claimed that during their married life her husband had beaten her up on numerous occasions.

Defendant does not challenge the sufficiency of the evidence to sustain her conviction of manslaughter. In seeking a reversal defendant makes two contentions: (1) The court erred in refusing to give an instruction proposed by her; and (2) the court erred in its comments to the jury on the evidence.

The defendant's defense was justifiable homicide. On that issue the court instructed the jury as follows:

1. "Homicide is justifiable and not unlawful when committed by any person when resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person.

2. "A homicide is justified and not punishable when committed by a person in the lawful defense of himself, when he has reasonable ground to apprehend that he is in danger of death or great bodily injury and that there is imminent danger of such a design being accomplished. The acts which a person may do in self-defense and justify under a plea of self-defense depend upon the conduct of those involved in the encounter and the circumstances attending it. No fixed rule is applicable to every case, but certain general principles are established as guides for the jury's determination.

"The law of self-defense is founded on the principle of necessity, either actual or apparent, and in order to justify the taking of human life on this ground the slayer, as a reasonable man, must have reason to believe and must believe that he is in danger of receiving great bodily harm; and further, the circumstances must be such that an ordinarily reasonable person, if he were in those circumstances and if he knew and saw what such person in real or apparent danger knows or sees, would believe it was necessary for him to use, in his defense and to avoid great bodily injury to himself, such force or means as might cause the death of his adversary.

"A bare fear that a person's life or limb is in danger is not sufficient to justify a homicide. To justify taking the life of another in self-defense, the circumstances must be such as to excite the fears of a reasonable person placed in a similar position, and the party killing must act under the influence of such fears alone. The danger must be apparent and must be present and imminent, or must so appear at the time to the slayer as a reasonable person, and the killing must be done under a well-founded belief that it is necessary to save one's self from death or great bodily harm.

3. "To justify a homicide committed by one in resisting or repelling an assault or battery committed or attempted to be committed upon his person by another, it must appear to the slayer as a reasonable man that a threatened danger is immediate, and such appearance of danger must be sufficient to excite the fears of a reasonable person, if in like position, that he was in danger of receiving death or great bodily harm, and the slayer must act under the influence of such fears and not in a spirit of revenge; and further, the degree of resistance must not be clearly disproportionate to the nature of the injury offered or given; the force used in repelling or resisting the assault or battery must not be clearly greater than is apparently necessary."

In this connection, defendant also requested that the jury be instructed that "Any husband who wilfully inflicts upon his wife corporal injury resulting in a traumatic condition is guilty of a felony." This requested instruction was based on Penal Code, section 273d, the pertinent part of which reads: "Any husband who wilfully inflicts upon his wife corporal injury resulting in a traumatic condition . . . is guilty of a felony. . . ." In refusing to give the requested instruction the judge noted thereon his reasons for its rejection, as follows: "Refused because conflicts with instructions on justification submitted by defendant [and given and quoted above] which require apprehension of death or great bodily injury."

It is true that Penal Code, section 197, subdivision 1, does provide that homicide is justifiable when resisting an attempt to commit a felony. But the section does no more than codify the common law and should be read in the light of it. Taken at face value, and without qualification, it represents an oversimplification of the law today.

The authorities generally rely on Blackstone for the earliest expression of the rule. He rationalized it in terms of no killing being justified to prevent crime unless the offense was punishable by death. (4 Blackstone's Commentaries, pp. 180-182.) But in those days all felonies were capital offenses.

Perhaps the leading American case on the point is *Storey* v. *State*, 71 Ala. 329, 336-341, where the early law is reviewed and rejected, and the application of the rule limited to the commission of felonies that involve a danger of great personal harm, or "some atrocious crime attempted to be committed by force." This limitation is today generally recognized.

(Perkins on Criminal Law, 1957 ed., pp. 880-883; 1 Wharton's Criminal Law, Anderson, 1957 ed., pp. 453-456; 1 Warren on Homicide, 1938 ed., pp. 634-637.) Any civilized system of law recognizes the supreme value of human life, and excuses or justifies its taking only in cases of apparent absolute necessity. (*State* v. *Nodine,* 198 Ore. 679 [259 P.2d 1056, 1067-1071].)

In creating the statutory felony of wife-beating the purpose of the legislature was not to issue a license for a wife to kill her husband but to provide a means of dealing with a particular family situation. The punishment provided by a statute is not necessarily an adequate test as to whether life may be taken for in some situations it is too artificial and unrealistic. We must look further into the character of the crime, and the manner of its perpetration (see *Storey* v. *State, supra*). When these do not reasonably create a fear of great bodily harm, as they could not if defendant apprehended only a misdemeanor assault, there is no cause for the exaction of a human life. A misdemeanor assault must be suffered without the privilege of retaliating with deadly force. (*People* v. *Webster,* 13 Cal.App. 348 [109 P. 637]; *People* v. *Anderson,* 57 Cal.App. 721, 727 [208 P. 204].) The fact that the assault is committed by a husband should not alter the rule. The existence of the matrimonial status should be an additional reason to forego resort to a homicide. The legislative purpose in enacting section 273d, Penal Code, was to reduce domestic conflict, not to promote resort to violence in the household.

The language of the statute (Pen. Code, § 197, subd. 1) lends support to this view. It says that homicide is justifiable in resisting an attempt to murder, or to commit a felony, or to do some great bodily injury. By implication, the felony contemplated by the statute is one that is more dangerous than a personal assault. The trial court instructed the jury fully and correctly on justifiable homicide. There was no error in refusing defendant's requested instruction.

■ Defendant's complaint that the court's comments on the evidence were erroneous is based on the judge's answers to certain questions propounded to him by the jurors during the course of their deliberations. The first question asked by the jurors was: "Please define for us the term in the instructions 'great bodily harm' and what it entails." In answering this and later questions defendant complains that the judge did not at that time inform the jury that they were

the exclusive judges of the facts and credibility of the witnesses, and that the judge's responses to the jury were confusing, erroneous and invaded the province of the jury. Initially, the court advised the jurors that "You are the exclusive judges of the facts and of the effect and value of the evidence. . . ." It was not necessary to again repeat this instruction. As to the judge's response to the jury's questions, it should be pointed out that he took great pains to avoid invading the jury's province and we believe he succeeded. It is true that some of his statements to the jury might have been phrased with greater precision and that some of them may possibly have caused some confusion in their minds, but it does not appear probable that this prejudiced defendant's defense.

Furthermore, counsel made no objection to the judge's comments. Nor did he make any suggestion that any statement of the court be stricken or clarified. ▇▇▇ "A litigant cannot withhold his objections and motions with respect to the conduct of a trial and, on appeal, challenge the acts of the trial court. It should have the first opportunity to correct its rulings or instruct with reference to any inappropriate remark." (*People* v. *Ernst,* 121 Cal.App.2d 287, 294 [263 P.2d 114]; see *Cooper* v. *Superior Court,* 55 Cal.2d 291 [10 Cal.Rptr. 842, 359 P.2d 274].)

Defendant had a fair trial, the evidence amply supports her conviction, and we find nothing in the record that warrants a reversal.

The judgment and the order denying a new trial are affirmed.

Ashburn, J., and Herndon, J., concurred.