[Crim. No. 23746. Second Dist., Div. Five. Aug. 23, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
DALE MICHAEL PIORKOWSKI, Defendant and Appellant.

## Counsel

Belvin Kent Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**STEPHENS, J.**—Defendant (Dale Michael Piorkowski) was charged by information with violating Penal Code section 187 (murder), and a jury convicted him of involuntary manslaughter (Pen. Code, § 192, subd. 2). Motion for a new trial was denied, and criminal proceedings were adjourned for a diagnostic study pursuant to section 1203.03. Criminal pro-

ceedings were reinstated, and defendant was placed on probation for a period of 4 years on the condition that he spend the first 180 days in the county jail. He was given credit for the 73-day period he was detained in jail.

The prosecution arose as a result of the fatal shooting of Herman Johnson at about 4 p.m. on August 10, 1972, on a public street near defendant's place of employment. It was not disputed that defendant fired the fatal shot, but it was the theory of the defense that the killing was justified pursuant to Penal Code section 197, subdivision 4.[1]

The record indicates that just prior to the killing defendant left his place of employment to obtain some cigars from a liquor store nearby. While walking to the liquor store, defendant noticed three youths in a dry cleaning establishment. One of the youths appeared to have climbed over the counter and gone behind it. Defendant proceeded to the liquor store. On his return, he observed the three youths walking away from the dry cleaning establishment. He inquired of the manager of the establishment whether everything was all right. The manager discovered that a wallet from her purse was missing. The purse had been behind the counter. Defendant told the manager to call the police, and he then gave chase after the youths. Defendant pulled a pistol out of a holster attached to his belt, and as he caught up with the youths, he ordered them to "halt." Two of the youths complied, but the third (the victim) continued on. Defendant grabbed ahold of the third youth, and a stuggle ensued. During the struggle the weapon was fired by defendant into the head of the victim.[2] Immediately after the shooting, defendant was heard to say, "My God, it was an accident." Shortly thereafter the police arrived. Defendant handed the pistol to an officer and stated, "I shot a male negro suspect.[3] This is the gun. You can have the gun."

 In analyzing the defense (and the contentions on appeal), we start with Penal Code section 837: "A private person may arrest another: 1. For

---

[1]Penal Code section 197, subdivision 4, provides: "Homicide is also justifiable when committed by any person in any of the following cases: . . . . [¶] When *necessarily committed* in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace." (Italics added.) We note that all references in section 197, subdivisions 1 through 3, justify a homicide *only* where violence is involved or threatened.

[2]The autopsy showed that the cause of death was a gunshot wound to the brain.

[3]The victim was observed by the investigating police to be lying on the ground, bleeding, with the wallet which had been taken from the cleaning establishment at his side.

a public offense committed or attempted in his presence. 2. When the person arrested has committed a felony, although not in his presence. 3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it."

Here, the right to arrest (and to exercise such force as authorized to accomplish it) must be justified under subdivisions 2 or 3 of section 837. In either instance, there must be established the fact that a felony has in fact been committed. If there was no right to arrest existent in the instant case, there can be no justification for defendant to have used the force involving a deadly weapon. As we stated in *People* v. *Aldapa*, 17 Cal. App.3d 184, 188 [94 Cal.Rptr. 579]: "For there to be a valid arrest by a private citizen under Penal Code section 837, subdivision 3 [and, we add, under subdivision 2], the requirement that there in fact be a felony committed can only be met if there is evidence of the corpus delicti and it is an offense known by the arresting party to have been committed."

In the instant case, the necessary elements of a burglary were established: there was evidence that the victim and his two associates had seen a dollar bill on the counter as they passed by the cleaners and they entered with the intent to take the dollar. The victim took the wallet from the purse, and one of the "associates" took the dollar bill. The three left the store. These factors were sufficient to support a finding that a burglary had in fact been committed. Defendant observed the three youths in the store and observed one of them go behind the counter as the others engaged the attention of the manager. Defendant ascertained that the wallet had been taken. Consequently, defendant had the "reasonable cause for believing" the persons he sought to arrest had committed the burglary. We therefore reach the main issue here presented: Was the force used authorized under Penal Code section 197?

██ Defendant argues that "the homicide was justifiable and excusable," relying upon Penal Code sections 197, 837, and 12031, subdivision (i).[4]

At common law, one could use deadly force to prevent the commission of a felony. (Perkins, Criminal Law (2d ed.) pp. 989-993.) Statutory expansion of the class of crimes punishable as felonies has made the common law rule manifestly too broad. (See *Commonwealth* v. *Chermansky*, 430 Pa. 170 [242 A.2d 237, 32 A.L.R.3d 1072].) ██ It appears

---

[4]With certain exceptions, subdivision (a) of section 12031 makes it a misdemeanor to carry a loaded firearm in specified areas. Subdivision (i) states: "Nothing in this section is intended to preclude the carrying of a loaded firearm by any person while engaged in the act of making or attempting to make a lawful arrest."

that the principle that deadly force may be directed toward the arrest of a felon is a correct statement of the law only where the felony committed is one which threatens death or great bodily harm. (*Commonwealth* v. *Chermansky, supra*; *State* v. *Nyland*, 47 Wn.2d 240 [287 P.2d 345]. We are not of the opinion that Penal Code section 197, subdivision 4, mandates a different result. As was stated by the court in *People* v. *Jones*, 191 Cal.App.2d 478, 481-482 [12 Cal.Rptr. 777] in construing Penal Code section 197, subdivision 1:[5] "It is true that Penal Code, section 197, subdivision 1, does provide that homicide is justifiable when resisting an attempt to commit a felony. But the section does no more than codify the common law and should be read in the light of it. Taken at face value, and without qualification, it represents an oversimplification of the law today.

"The authorities generally rely on Blackstone for the earliest expression of the rule. He rationalized it in terms of no killing being justified to prevent crime unless the offense was punishable by death. [Citation.] But in those days all felonies were capital offenses.

"Perhaps the leading American case on the point is *Storey* v. *State*, 71 Ala. 329, 336-341, where the early law is reviewed and rejected, and the application of the rule limited to the commission of felonies that involve a danger of great personal harm, or 'some atrocious crime attempted to be committed by force.' This limitation is today generally recognized. (Perkins on Criminal Law, 1957 ed. pp. 880-883; 1 Wharton's Criminal Law, Anderson, 1957 ed. pp. 453-456; 1 Warren on Homicide, 1938 ed. pp. 634-637.) Any civilized system of law recognizes the supreme value of human life, and excuses or justifies its taking only in cases of apparent absolute necessity. (*State* v. *Nodine*, 198 Ore. 679 [259 P.2d 1056, 1067-1071].)" The reasoning of the court in *Jones* applies with like force and effect in construing subdivision 4 of section 197. (Cf. *People* v. *Walker*, 32 Cal.App.3d 897 [108 Cal.Rptr. 548].) The law of this state makes it a felony to commit such offenses as the theft of $50 worth of avocados, olives, artichokes, nuts, etc. (Pen. Code, § 487), the conversion of real estate of the value of $50 or more into personal property by severance from the realty of another (Pen. Code, § 487b), theft of a dog the value of which exceeds $200 (Pen. Code, §§ 487e and 487g), a second conviction for indecent exposure (Pen. Code, § 314), or conspiracy to commit any crime (Pen. Code, § 182). Needless to say, modern

---

[5]Penal Code section 197, subdivision 1 provides: "Homicide is also justifiable when committed by any person in any of the following cases: When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or . . . ."

rationale must preclude the holding that a private citizen may use deadly force in attempting to arrest a person for such offenses.

■ The evidence disclosed by the record in this case clearly demonstrates that the crime committed by the victim was not of the type which normally threatens death or great bodily harm. Even though the evidence did evince the commission of a burglary by the victim, as defendant asserts, the use of deadly force to effect the arrest was not warranted. We do not have here a burglary of a dwelling at night (common law burglary), such as was the case in *People* v. *Walker*, 32 Cal.App.3d 897 [108 Cal. Rptr. 548]. Rather, the crime was committed during daylight hours and in a business establishment which was open to the public at the time. No confrontation aided by force was involved. While this factual pattern may constitute "statutory burglary," which is a felony (Pen. Code, § 459), clearly there is not the attendant risk to human life which accompanies common law burglary.

We are of the opinion that the character of the crime and the manner of its perpetration did not warrant the use of deadly force to effect the arrest, i.e., it was not "necessarily committed."

■ There is also a contention made to the effect that the jury was inadequately instructed as to defendant's right to accomplish the arrest by lawful ways and means. There is no merit to this contention.[6] The

---

[6]These are the instructions which are pertinent to this issue:

"Further, a loaded firearm may be carried by any person while engaged in the act of making or attempting to make a lawful arrest."

"Involuntary manslaughter is the unlawful killing of a human being without malice aforethought and without an intent to kill.

"A killing is unlawful within the meaning of this instruction if it occurred:

"(1) During the commission of a misdemeanor which is inherently dangerous to human life, namely the offense of violation of 417 Penal Code, drawing, or exhibiting or using any firearm, or

"(2) In the commission of an act ordinarily lawful which involves a high degree of risk of death or great bodily harm, without due caution and circumspection."

"Every person who, except in self-defense, or except when lawfully attempting to arrest and detain a person who has committed a felony or misdemeanor as you will be later instructed, in the presence of another person, draws or exhibits any firearm or weapon in any fight or quarrel, is guilty of a misdemeanor, violation of Section 417 Penal Code, State of California."

"The term 'without due caution and circumspection' as used in these instructions refers to negligent acts which are aggravated, reckless and gross and which are such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as to be contrary to a proper regard for human life or, in other words, a disregard for human life or an indifference to consequences. The facts must be such that the fatal consequences of the careless or negligent act could reasonably have been foreseen and it must appear that the death was not the

jury was instructed that "a loaded firearm may be carried by any person while engaged in the act of making or attempting to make a lawful arrest." The jury was also instructed in pertinent part: "A homicide is justifiable when necessarily committed in making the arrest of a person who has actually committed a felony and is fleeing from justice or resisting arrest and cannot otherwise be taken, but the facts and circumstances must be such as to justify the conclusion that the. use of such a degree of force was reasonably necessary."

All of the instructions given were necessitated by the evidence, depending upon which version of the facts the jury accepted. Beyond doubt,

---

result of misadventure but the natural and probable result of a reckless or grossly negligent act."

"If you find a homicide in this case to be justifiable or excusable, the defendant must then be found not guilty."

"Homicide.is justifiable and not unlawful when necessarily committed in attempting, by lawful ways and means: To apprehend and arrest and detain any person who has actually committed a felony."

"An arrest by a private person is made by actually restraining the person arrested and the person arrested may be subjected to such restraint as is reasonably needed for his said arrest and continued detention. Where the arrest is lawful, the person being arrested has a duty to remain passive and any force used by him in resisting is an assault. In that event the person effecting the arrest may use such force as is reasonably necessary to accomplish the arrest and the detention and to defend himself. In so doing he may pursue an escaping prisoner and may use whatever reasonable means are available and may orally summon as many persons as he deems necessary to assist him, but he must not subject the prisoner to more force and restraint than is reasonably necessary for his arrest and detention in the circumstances with which he is confronted.

"The person making an arrest is acting lawfully if the force and means used are such as would be considered necessary by the ordinarily reasonable person placed in the same position and if, from the standpoint of such a reasonable person, the force and means used was apparently necessary."

"A homicide is justifiable when necessarily committed in making the arrest of a person who has actually committed a felony and is fleeing from justice or resisting arrest and cannot otherwise be taken, but the facts and circumstances must be such as to justify the conclusion that the use of such a degree of force was reasonably necessary.

"A person making an arrest is never justified in killing or seriously injuring another who he seeks to arrest for the commission of a misdemeanor committed or attempted in his presence though he may use all reasonable force necessary for such arrest and detention short of said killing or serious injury.

"Whether engaged in an attempt to arrest for a felony or misdemeanor, the person attempting such arrest may use reasonable force in his own self-defense as I shall otherwise instruct you."

"The unintentional killing of a human being is excusable and not unlawful when committed by accident and misfortune in the performance of a lawful act by lawful means and where the person causing the death acted with that care and caution which would be exercised by an ordinarily careful and prudent individual under like circumstances."

we have a set of facts showing that defendant not only used a deadly weapon in a threatening manner, but that he also had that weapon in such ready condition to be used in excess of reasonably permissible force (as the jury undoubtedly found). Under such circumstances, the imminent danger presented by the gun's condition of being ready for firing would bring defendant within section 192, subdivision 2[7] and make inapplicable the excuse of accidental killing. Penal Code section 195, subdivision 1, states that "Homicide is excusable . . . When committed by accident and misfortune, . . . or in doing any other lawful act *by lawful means, with usual and ordinary caution*, and without any unlawful intent." (Italics added.) The limiting language of section 12031, subdivision (i) compels this conclusion, for there it states: "Nothing in this section is intended to preclude the carrying of a loaded firearm by any person while engaged in the act of making or attempting to make a lawful arrest." There is no authorization within this section for a person to negligently brandish or otherwise use such weapon in a manner which might result in excessive force to accomplish the arrest. (See section 197 for the limited purposes the weapon may be used as authorized to be carried under section 12031, subdivision (i).)

■ Defendant contends that the court should have instructed that the victim had been guilty of burglary as a matter of law. This contention fails. We have noted previously that the evidence adduced at the trial was sufficient to support an instruction and finding that a burglary had in fact been committed. However, we are not of the opinion that such a finding was *mandated* by the evidence.[8] One of the youths, James

---

[7]Penal Code section 192, subdivision 2: "Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds: . . . . 2. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; provided that this subdivision shall not apply to acts committed in the driving of a vehicle."

[8]The jury was instructed that depending upon which version of the facts it found to be true, defendant could be found guilty of involuntary manslaughter either on the theory of negligent homicide or misdemeanor-manslaughter. There was evidence adduced during trial to support both theories. If the jury found that a felony (burglary) had been committed, it was instructed that defendant was privileged to effect an arrest. However, the jury could have found that the amount of force expended to effect the arrest exceeded reasonable bounds and resulted in the unexcused death of the victim. On the other hand, if the jury found that a felony had not in fact been committed, then defendant was *not* privileged to effect an arrest. (Pen. Code, § 837.) Defendant himself could have been found to have committed a misdemeanor by "exhibiting or using a firearm in the presence of another person in a rude, angry or threatening manner." (Pen. Code, § 417.) Under such circumstances a misdemeanor-manslaughter instruction would be proper.

White, testified at the trial that the youths had entered the dry cleaning establishment for the purpose of having a hat cleaned. White denied that any of the youths had gone behind the counter. He further stated that the dollar bill on the counter belonged to the deceased, who had placed the bill on the counter sometime after entering. Subsequently, White was impeached by previous statements he had made to the police which indicated that the youths had entered the establishment for the purpose of committing a theft. To establish a fact as a matter of law, the state of the record must be such that no other reasonable conclusion is legally deducible from the evidence, and any other holding would be so lacking in evidentiary support that a reviewing court would be compelled to reverse it upon appeal. (*McBride* v. *Atchinson, Topeka & S.F. Ry. Co.,* 44 Cal.2d 113, 116 [279 P.2d 966]; *People* v. *Walker, supra,* 32 Cal. App.3d 897, 904.) In the instant case, the testimony of White was the only direct evidence available relative to the question of intent. On that question, the jury was presented with two conflicting versions of what had happened, both versions coming from the same source—White. Clearly, under these circumstances the resolution of the true facts was properly within the province of the jury.

Defendant's reliance upon *People* v. *Walker, supra,* is misplaced. In *Walker,* the evidence was characterized by the court as having "clearly established" that a burglary had been committed. (32 Cal.App.3d at pp. 903-904.)[9] In the instant case, whether a burglary had in fact been committed necessarily rested upon which version of the facts relative to intent propounded by White the jury believed. This presented a clear factual question for the jury's resolution.

The judgment is affirmed.

Kaus, P. J., and Hastings, J., concurred.

---

[9]In *Walker,* the prosecution conceded in his argument to the jury that the victim had been a party to the burglary. The victim's fingerprints were found in the burglarized dwelling and an accomplice tesitfied that he together with the victim and two others had discussed beforehand breaking into the dwelling, and that the victim had taken certain items from the dwelling after entering it. The opinion does not indicate whether the evidence establishing that a burglary had been committed was in any way contraverted or impeached. However, with reference to other issues on appeal, the court noted instances where conflicting evidence was properly presented to the jury for determination.