[Civ. No. 45880. Second Dist., Div. Five. June 26, 1975.]

BARBARA MARY KRAMER, Petitioner, v.
THE MUNICIPAL COURT FOR THE LOS ANGELES JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Richard S. Buckley, Public Defender, Harold E. Shabo, Leslie E. McMillan and Dennis A. Fischer, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Joseph P. Busch, District Attorney, Harry B. Sondheim and Arnold T. Guminski, Deputy District Attorneys, for Real Party in Interest.

OPINION

KAUS, P. J.—A felony complaint charging petitioner, Barbara Mary Kramer, with possession of heroin (Health & Saf. Code, § 11350), was filed in the respondent court on May 28, 1974. After arraignment, on the recommendation of the district attorney and with petitioner's consent, the matter was referred to the probation department for its investigation and recommendation on the question whether petitioner's case should be diverted. (Pen. Code, § 1000.1.) Diversion was recommended, and on July 26, 1974, the case was diverted for one year on condition that petitioner cooperate with the probation department and participate in a program of education, treatment, or rehabilitation, as directed by the probation officer. The matter was continued for "further report" to January 17, 1975.

Sometime before the continued date the probation officer filed a report recommending that diversion be terminated and criminal proceedings be resumed. The report recited that petitioner had failed to complete a drug diversion program and had failed to report to the probation officer, by mail, during the months of November and December. The report also summarized petitioner's explanations for these "violations."

On January 17, 1975, petitioner appeared in the respondent court. The proceedings started briskly with the court announcing: "Barbara

Kramer, diversion is terminated." During the discussion which followed—copied below,[1]—the court made it abundantly clear that, in its

[1]"THE COURT: Barbara Kramer, diversion is terminated. To the original charge in this matter, which is possession of heroin, how do you plead?

"THE WITNESS: Not guilty.

"THE COURT: Diversion is terminated.

"THE WITNESS: Why is it terminated?

"THE COURT: Because you haven't cooperated.

"THE WITNESS: I have been going to my—to the school, and everything. I have been in contact with my parole officer two times.

"THE COURT: Defendant has failed to report for the months of November and December.

"THE WITNESS: I have talked to them over the phone.

"THE COURT: Failure to keep two scheduled appointments during the month of December. Defendant states she failed to report by mail because she misplaced her address. And they gave self-addressed envelopes to you.

"THE WITNESS: I have been going to that schooling I am supposed to go through.

"THE COURT: Didn't finish that either.

"THE WITNESS: Yes, I have. I even have a paper here from it, and I have my counselor here too.

"THE COURT: Defendant says she is unable to complete a program due to transportation problems, and the disruption of the drug program, caused by the death of a staff member. Your matter is set down for preliminary hearing in this Court, Division 85, on January the 27th at 9:00 a.m. Since you did appear today on a notice, I will release you on your own recognizance. Do you have funds to hire an attorney?

"THE WITNESS: No.

"THE COURT: All right. Go over there and fill out a form for the Public Defender's Office.

"[DEPUTY PUBLIC DEFENDER]: I have spoken to Miss Kramer, and she has informed the Public Defender that she denies the allegations. Ask that the matter be set down for a formal hearing.

"THE COURT: I don't think there is a question of formal hearings on probation. I don't think it is the same type of thing as being placed on probation or being placed on parole.

"[DEPUTY PUBLIC DEFENDER]: Be that as it may, I feel that it is similar and is analogous. We would like to have a formal hearing. If the Court denied that, I would please like the Court to read the letter that she does have from the Diversion Program that she is in. She has been attending regularly and doing well.

"THE COURT: It must be some sort of a drug — — —. Let's see it.
(Letter is handed to the Court)

"[DEPUTY PUBLIC DEFENDER]: I would also point out that Miss Kramer has suffered no arrests since she was put on diversion, which was about seven months ago. Also, as to the missing of the appointments, she has indicated she was only aware of missing one appointment and that was when her son got a hernia, and she had to take him to the hospital. And I would also like to have the opportunity of presenting witnesses to establish that point as well.

"THE COURT: Well, I have had some experience with this program, and I don't have a lot of respect for it.

"[DEPUTY PUBLIC DEFENDER]: She did indicate, however, that her original counselor did die, so the program was extended for a few weeks so that another counselor could be provided her.

"THE COURT: My original decision stands. She is going to have to plead.

"[DEPUTY PUBLIC DEFENDER]: The Court is not going to grant a hearing on this matter?

view, petitioner was not entitled to a hearing on whether diversion should be terminated.[2]

On February 14, 1975, petitioner applied for a writ of prohibition or mandate to the superior court. It was denied on February 25. She then filed a similar petition in this court. We granted an alternative writ of mandate because of the absence of any other adequate remedy under the circumstances. (*Morse* v. *Municipal Court,* 13 Cal.3d 149, 155 [118 Cal.Rptr. 14, 529 P.2d 46].)

Petitioner attacks the order terminating diversion on three grounds:

(1) She claims that the order was beyond the respondent court's jurisdiction because section 1000.2 of the Penal Code does not authorize termination of diversion, unless the divertee "is arrested and convicted of any criminal offense during the period of diversion."

(2) The constitutional principle embodied in *Morrissey* v. *Brewer,* 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], and the many decisions applying it, demanded a hearing before diversion could be terminated.

(3) In any event, termination of diversion was an abuse of discretion in view of the facts in her case.

---

"THE COURT: No, I am not. I have considered the letter that she sent in; and I have considered the report that is filed by the probation officer; and I am considering what is being testified by her—what you have stated that she told you, . . . and she is going to have to plead.

"[DEPUTY PUBLIC DEFENDER]: Miss Kramer will enter a plea of not guilty and ask the matter be set down for preliminary hearing.

"THE COURT: Preliminary hearing is set for January 27, at 9:00 a.m. Public Defender is appointed. (To the clerk)

"THE COURT: Bring that to the attention of the District Attorney's Office."

[2] The court also stated: "I have had some experience with this program, and I don't have a lot of respect for it." In context, it is not clear whether the court was referring to the statutory diversion program as such, or, rather, the particular drug counselling program to which she had been referred by the probation officer. The remark was made just after petitioner's counsel had handed a letter from a "Substance Abuse Counselor" to the court. The letter read as follows:

"This is in regards to Mrs. Barbara Cramer, who has been involved with our program for the past six months. She has been an active participant in our counseling sessions and we feel she has demonstrated an intense desire to upgrade herself and become a more productive member of our community. She has come a long way since her first session and we feel she has begun to deal with her everyday problems in a more mature and positive manner. This client needs encouragement and support which we feel will reinforce the strengths she naturally possess[es].

"In the event Mrs. Cramer should require our services in the future, we will be more than happy to provide whatever we have to offer."

We hold that: (1) The express statutory ground for terminating diversion is not exclusive and the respondent court had jurisdiction to terminate. (2) Petitioner was entitled to a hearing as a matter of statutory interpretation; we therefore do not reach her constitutional argument. (3) Whether diversion should be terminated in this particular case, should be decided by the respondent court after an adequate hearing.

■ Petitioner correctly observes that the only ground for terminating diversion specifically mentioned in Penal Code section 1000.2 is the arrest and conviction of the divertee on "any criminal offense during the period of diversion, . . ." Nevertheless, nothing in the statute negatives the court's power to terminate diversion for other reasons; to the contrary, such a power is compellingly implied by the statutory directive that the probation department shall file progress reports "not less than every six months." Section 1000.2 of the Penal Code permits diversion for a period up to two years. The Legislature could not have intended semi-annual progress reports for the sole purpose of informing the diverting court whether it had exercised its powers wisely or foolishly: clearly it assumed a power to terminate diversion before the original period fixed by the court expired. Indeed, in *Morse* v. *Municipal Court, supra,* 13 Cal.3d 149, 153-154, the Supreme Court declared unequivocally: "During the stay of criminal proceedings the court may rescind diversion *for cause* such as the defendant's failure to continue to participate in the drug treatment program." (Italics added.) We adopt this dictum as our holding.

■ The real question before us is whether in a situation such as the one before us, the Legislature intended that the power to terminate for cause be exercised summarily without a hearing, based only on the probation department's progress report.[3]

In support of her right to a hearing, petitioner arrays the usual due process artillery. (*Morrissey* v. *Brewer, supra,* 408 U.S. 471; *Gagnon* v. *Scarpelli,* 411 U.S. 778 [36 L.Ed.2d 665, 93 S.Ct. 1756], et al.) The People, on the other hand, find comfort in the more recent decision of *Gerstein* v. *Pugh* (1975) 420 U.S. 103, 119-121 [43 L.Ed.2d 54, 69, 95 S.Ct. 854] holding that due process does not require the usual "adversary safeguards" for a determination that an arrested person is to be held in custody pending further proceedings. They point out that the result of

---

[3] We stress that petitioner had not absconded but was present, with counsel, on the precise date to which her matter had been continued on July 26, 1974. No issue of waiver of her right to a hearing, if any, is involved, since a hearing was expressly demanded.

the respondent court's termination of diversion does not, as such, entail a loss of liberty, but simply requires petitioner to plead to a felony complaint.[4]

We do not belittle petitioner's due process argument which is substantial; so, however, is the People's position. We need not decide who is right. ■ Our duty in interpreting the diversion statute is not limited to avoiding a construction which makes it clearly unconstitutional. (See *San Francisco Unified School Dist.* v. *Johnson,* 3 Cal.3d 937, 942 [92 Cal.Rptr. 309, 479 P.2d 669].) It goes further: if possible, the statute must be construed so that "constitutional difficulties" will not even arise. (*D'Amico* v. *Board of Medical Examiners,* 6 Cal.App.3d 716, 726 [86 Cal.Rptr. 245]; see also, *White* v. *Valenta,* 234 Cal.App.2d 243, 249 [44 Cal.Rptr. 241, 13 A.L.R.3d 1271].)

■ Adhering to that principle we have no trouble at all in holding that section 1000.2 of the Penal Code which, by implication allows a termination of diversion for cause, also implies that such termination be preceded by an adequate hearing.

California has held for decades that where a statute, city charter, ordinance, or even the governing bylaws of a fraternal organization or labor union, provide for the loss of a right "for cause," a hearing is required absent "a clear showing of legislative intent to dispense with that right."[5] (*Ratliff* v. *Lampton,* 32 Cal.2d 226, 230 [195 P.2d 792, 10 A.L.R.2d 826].) "[C]ommon fairness and justice compel the inclusion of such a requirement by implication." (*Steen* v. *Board of Civil Service Commrs.,* 26 Cal.2d 716, 723 [160 P.2d 816].) Consistent with this rule of interpretation, a hearing is required before a bottle blower can be suspended from union membership (*Cason* v. *Glass Bottle Blowers Assn.,* 37 Cal.2d 134, 143-144 [231 P.2d 6, 21 A.L.R.2d 1387]), a probationary teacher or a civil servant dismissed (*Keenan* v. *S.F. Unified School Dist.,* 34 Cal.2d 708, 714 [214 P.2d 382]; *Steen* v. *Board of Civil Service*

---

[4]Petitioner particularly relies on *People* v. *Vickers,* 8 Cal.3d 451, 458-461 [105 Cal.Rptr. 305, 503 P.2d 1313], holding that, except in unusual circumstances, summary revocation of probation is, constitutionally impermissible. Petitioner's argument with the People thus reduces itself to the question whether, from the point of view of due process, the nature of the interest threatened when probation may be revoked is the same as the interest at stake when diversion may be terminated. (*Morrissey* v. *Brewer, supra,* 408 U.S. 471, 481-482 [33 L.Ed.2d 484, 494-495].)

[5]In *Fascination, Inc.* v. *Hoover,* 39 Cal.2d 260, 269-271 [246 P.2d 656], an ordinance provided for the issuance of a business license upon certain facts being "ascertained." It was held that "justice and policy" required an interpretation to the effect that the licensed applicant was entitled to a hearing.

*Commrs., supra,* 26 Cal.2d, pp. 722-723), a driver's or a horse trainer's license suspended (*Ratliff* v. *Lampton, supra,* 32 Cal.2d p. 230; *Carroll* v. *California Horse Racing Bd.,* 16 Cal.2d 164, 168 [105 P.2d 110]), a fish and game warden removed (*Welch* v. *Ware,* 161 Cal. 641, 645-647 [119 P. 1080]), or subordinate groves of Druids or Ku Klux Klan lodges suspended (*Grand Grove A. O. of D.* v. *Duchein,* 105 Cal. 219, 224-226 [38 P. 947]; *Knights of Ku Klux Klan* v. *Francis,* 79 Cal.App. 383, 386 [249 P. 539]). The list is almost endless.

It is useless to try to make fine legalistic distinctions between the rights protected by the cited line of authorities and the right involved when a divertee is threatened with termination of diversion. Given the abolition of the right-privilege distinction (*Goss* v. *Lopez* (1975) 419 U.S. 565, 572-573 [42 L.Ed.2d 725, 735-736, 95 S.Ct. 729]; *Bagley* v. *Washington Township Hospital Dist.,* 65 Cal.2d 499, 503-505 [55 Cal.Rptr. 401, 421 P.2d 409]), the source of the right to continue on diversion hardly matters. What is clear is that from the point of view of the divertee and the public itself the beneficial purposes of the program, explained in *People* v. *Superior Court (On Tai Ho),* 11 Cal.3d 59, 61-62 [113 Cal.Rptr. 21, 520 P.2d 405] are of an altogether higher order than some of the rights and privileges which we so scrupulously protect by affording hearings as a condition to deprival.

Whether or not diversion should be terminated in this particular case is not for us to say. The facts have never been established. We have no reason to believe that the respondent court will abuse its discretion after petitioner has had the hearing to which she is entitled.

Let a peremptory writ of mandate issue ordering the respondent court to set aside its order of January 17, 1975, terminating petitioner's diversion, and to proceed thenceforth in a manner consistent with this opinion.

Stephens, J., and Loring, J.,* concurred.

On July 16, 1975, the opinion was modified to read as printed above.

---

*Assigned by the Chairman of the Judicial Council.