[Civ. No. 38947. First Dist., Div. Two. Apr. 26, 1977.]

FRED KORTUM et al., Plaintiffs and Appellants, v.
JAMES ALKIRE, Individually and as
City Manager, etc., et al., Defendants and Respondents.

## COUNSEL

Jacobs, Sills & Coblentz, Nicholas B. Waranoff, Amitai Schwartz, Charles Marson, Vilma S. Martinez, Sanford Jay Rosen, William Bennett Turner, Lowell Johnston and Anthony G. Amsterdam for Plaintiffs and Appellants.

Russ, McConnell & Tarkington, C. Tarkington, Charles J. Williams and George G. Barnes for Defendants and Respondents.

## OPINION

ROUSE, J.—In this action plaintiffs challenge the legality of certain directives and practices of the Pleasant Hill Police Department which they contend authorized the use of deadly force in the apprehension of suspects following the commission of nonviolent felonies. At the time of the filing of this action, the four plaintiffs, Fred and Flora Kortum, Lena Taylor and Jacqueline Reynolds, were all residents and taxpayers of the City of Pleasant Hill. Their complaint alleged that such illegal practices on the part of the police department constituted an unlawful expenditure of tax funds and an unlawful waste of public property. The complaint named as defendants various Pleasant Hill city officials, as well as certain members of the police department.[1] Plaintiffs sought injunctive relief and a judgment declaring invalid the regulations and practices of the police department.

The trial court granted a summary judgment in favor of defendants, determining that the police and regulations and practices under attack were not unlawful. Plaintiffs have appealed from this judgment.[2]

[1]The defendants included the city manager, the assistant city manager and director of central services, the chief of police and two police officers.

[2]In the trial court, defendants argued that plaintiffs lacked standing to bring this action. The trial court rejected this argument, and defendants have made no attempt to renew it on appeal. Lest there be any question, we are satisfied that there is abundant authority to support the trial court's determination that the plaintiffs had standing to maintain this action. (See *Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242]; *Vogel* v. *County of Los Angeles* (1967) 68 Cal.2d 18 [64 Cal.Rptr. 409, 434 P.2d 961]; *Wirin* v. *Parker* (1957) 48 Cal.2d 890 [313 P.2d 844]; *Crowe* v. *Boyle* (1920) 184 Cal. 117 [193 P. 111]; *Ames* v. *City of Hermosa Beach* (1971) 16 Cal.App.3d 146 [93 Cal.Rptr. 786]; *Wirin* v. *Horrall* (1948) 85 Cal.App.2d 497 [193 P.2d 470].)

The section of the police regulations here under attack provides that an officer is never justified in using deadly force to stop the flight of an individual who has committed a misdemeanor. That section of the regulations then goes on to state that, "When the officer knows that the person he seeks to arrest has comitted a felony, the officer may use his gun in order to stop the flight; however, the law will not excuse the use of deadly force against the fleeing felon unless the immediate arrest could not have been made without it. Before shooting at the fugitive, the officer should make every effort to let him know that he is being sought by an officer of the law. It is important that the officer use his gun only as a last resort." The regulations also set forth, in extensive detail, circumstances under which, in felony situations, a firearm may or may not be used. The text of the regulations, however, does not distinguish between "violent" and "nonviolent" felonies. Plaintiffs alleged in their complaint that, in fact, it was the custom and practice of the Pleasant Hill Police Department to discharge firearms in the process of arresting fleeing felons in situations where neither the felony involved nor the suspect's conduct or flight posed any substantial risk of death or serious bodily harm to anyone.

Notwithstanding their scholarly discussion of several constitutional grounds upon which they claim a regulation authorizing the use of deadly force in a nonviolent felony situation can be attacked, plaintiffs concede that this court is bound to abstain from passing upon constitutional questions except where necessary. (*Syrek* v. *California Unemployment Insurance Appeals Board* (1960) 54 Cal.2d 519, 526-527 [7 Cal.Rptr. 97, 354 P.2d 625].) They point out that, in this instance, the constitutional issues need not be reached because the pertinent statutes, as interpreted by decisional law of this state, withhold authorization of the use of deadly force to apprehend persons suspected of only nonviolent felonies.

Section 196, subdivision 3, of the Penal Code, provides: "Homicide is justifiable when committed by public officers and those acting by their command in their aid and assistance, either—

" . . . . . . . . . . . . . . . . . .

"3. When necessarily committed in retaking felons who have been rescued or have escaped, or when necessarily committed in arresting persons charged with felony, and who are fleeing from justice or resisting such arrest."

Section 197, subdivisions 1, 2 and 4, of the Penal Code, provide that "Homicide is also justifiable when committed by any person in any of the following cases:

"1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,

"2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony . . . ; or,

". . . . . . . . . . . . . . . . . . .

"4. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace."

Section 835a of the Penal Code provides that "Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance.

"A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance."

Section 837 of the Penal Code provides that "A private person may arrest another:

"1. For a public offense committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it."

Sections 196, 197 and 837 were originally enacted in 1872, and section 835a was enacted in 1957.

It must be noted that the statutes refer only to "a felony." The wording contained therein does not distinguish the "violent" variety from the "nonviolent." Thus, it appears that the use of deadly force in resisting an attempt to commit, or in arresting the perpetrator of, a nonviolent felony is authorized. However, our courts have interpreted these statutes as being more restrictive in their application. In *People* v. *Jones* (1961) 191 Cal.App.2d 478, 481-482 [12 Cal.Rptr. 777], the court stated, "It is true that Penal Code, section 197, subdivision 1, does provide that homicide is justifiable when resisting an attempt to commit a felony. But the section does no more than codify the common law and should be read in the light of it. Taken at face value, and without qualification, it represents an oversimplification of the law today.

"The authorities generally rely on Blackstone for the earliest expression of the rule. He rationalized it in terms of no killing being justified to prevent crime unless the offense was punishable by death. (4 Blackstone's Commentaries, pp. 180-182.) But in those days all felonies were capital offenses.

"Perhaps the leading American case on the point is *Storey* v. *State,* 71 Ala. 329, 336-341, where the early law is reviewed and rejected, and the application of the rule limited to the commission of felonies that involve a danger of great personal harm, or 'some atrocious crime attempted to be committed by force.' This limitation is today generally recognized. (Perkins on Criminal Law, 1957 ed., pp. 880-883; 1 Wharton's Criminal Law, Anderson, 1957 ed., pp. 453-456; 1 Warren on Homicide, 1938 ed., pp. 634-637.) Any civilized system of law recognizes the supreme value of human life, and excuses or justifies its taking only in cases of apparent absolute necessity. (*State* v. *Nodine,* 198 Ore. 679 [259 P.2d 1056, 1067-1071].)"

In *People* v. *Piorkowski* (1974) 41 Cal.App.3d 324 [115 Cal.Rptr. 830], the court found the reasoning of the *Jones* case applicable to subdivision 4 of section 197, insofar as said section purportedly authorized a private citizen to use deadly force in effecting the arrest of a person fleeing following the commission of a nonviolent felony. There the court stated: "The reasoning of the court in *Jones* applies with like force and effect in construing subdivision 4 of section 197. (Cf. *People* v. *Walker,* 32 Cal.App.3d 897 [108 Cal.Rptr. 548].) The law of this state makes it a felony to commit such offenses as the theft of $50 worth of avocados, olives, artichokes, nuts, etc. (Pen. Code, § 487), the conversion of real estate of the value of $50 or more into personal property by severance

from the realty of another (Pen. Code, § 487b), theft of a dog the value of which exceeds $200 (Pen. Code, §§ 487e and 487g), a second conviction for indecent exposure (Pen. Code, § 314), or conspiracy to commit any crime (Pen. Code, § 182). Needless to say, modern rationale must preclude the holding that a private citizen may use deadly force in attempting to arrest a person for such offenses.

"The evidence disclosed by the record in this case clearly demonstrates that the crime committed by the victim was not of the type which normally threatens death or great bodily harm. Even though the evidence did evince the commission of a burglary by the victim, as defendant asserts, the use of deadly force to effect the arrest was not warranted. We do not have here a burglary of a dwelling at night (common law burglary), such as was the case in *People* v. *Walker,* 32 Cal.App.3d 897 [108 Cal.Rptr. 548]. Rather, the crime was committed during daylight hours and in a business establishment which was open to the public at the time. No confrontation aided by force was involved. While this factual pattern may constitute 'statutory burglary,' which is a felony (Pen. Code, § 459), clearly there is not the attendant risk to human life which accompanies common law burglary.

"We are of the opinion that the character of the crime and the manner of its perpetration did not warrant the use of deadly force to effect the arrest, i.e., it was not 'necessarily committed.' " (Pp. 329-330.)

In *People* v. *Ceballos* (1974) 12 Cal.3d 470 [116 Cal.Rptr. 233, 526 P.2d 241], which was decided less than one month after *Piorkowski,* the California Supreme Court held that the reasoning of the *Jones* case applied to subdivision 2 as well as subdivision 1 of section 197 of the Penal Code and that neither provision authorized the use of deadly force by a private citizen to prevent the commission of a felony (burglary) where the character and manner of said offense do not reasonably create a fear of serious bodily harm. (P. 479.)

Since *Jones, Piorkowski* and *Ceballos* were all cases involving the use of deadly force by private citizens, it has been argued by the defendants herein that the rationale of those cases is inapplicable to police officers acting in the line of duty. However, this argument was put to rest in *Long Beach Police Officers Assn.* v. *City of Long Beach* (1976) 61 Cal.App.3d 364 [132 Cal.Rptr. 348], a case which was decided after the filing of the briefs in this action. In the *Long Beach* case, the factual situation was the converse of that before us. There, the plaintiff, a police officers'

association, claimed that the rights of its members, both under the Constitution and pursuant to state statute, had been violated by a provision in the police department manual which limited the use of firearms by police officers. The regulation in question provided that an officer could discharge a firearm to effect an arrest, prevent an escape or recapture an adult felony suspect only when the officer had reasonable cause to believe that " '(a) the crime for which the arrest is sought involved conduct including the use or threatened use of deadly force *and* [italics in original] (b) *there is a substantial risk that the person whose arrest is sought will cause death or serious bodily harm if apprehension is delayed.* [Italics ours.]' " (Pp. 368-369.)

The appellate court in the *Long Beach* case upheld the regulation and concluded that it was neither unconstitutional nor in conflict with the California Penal Code. In reaching its conclusion, the court reasoned that sections 196, 197 and 835a of the Penal Code, as construed by the courts, imposed certain limitations upon the use of deadly force, but were not intended "to preclude a more cautious use of deadly force by local police agencies than permitted by the code sections." (P. 372.)

The court stated, "The regulations do not endanger the safety of the officer. Consistent with the Penal Code, they preserve the right of the officer to use deadly force when in the necessary defense of himself (or other persons) from death or serious injury when attacked. This standard applies as well when the suspect is a juvenile.

"With regard to arrest, prevention of escape or recapture of adult felony suspects, the regulations are not substantially inconsistent with the Penal Code as interpreted by the courts. Plaintiff concedes that in this day and age neither an officer nor a private person may rely on the literal language of the 1872 code provisions which appear to justify the use of deadly force to effect an arrest for, or to prevent the commission of, any felony. In view of the great expansion of crimes which have been made felonies, the courts have held that deadly force may be used against felony suspects only if the felony is a 'forcible and atrocious' one, which threatens death or great bodily harm. (*People* v. *Ceballos,* 12 Cal.3d 470, 477-484 [116 Cal.Rptr. 233, 526 P.2d 241]; *People* v. *Piorkowski,* 41 Cal.App.3d 324, 328-332 [115 Cal.Rptr. 830]; *People* v. *Jones,* 191 Cal.App.2d 478, 481-482 [12 Cal.Rptr. 777].)" (Pp. 373-374.)

In rejecting the argument that different rules should apply to police officers than to private citizens, the court stated, "We are not persuaded

that regulation 4242 conflicts with the Penal Code, or that it actually subjects the officers to more restrictive standards than would apply to a private citizen effecting an arrest, as contended by plaintiff. If the regulation is in fact more restrictive than the standards imposed on a private citizen, there is a rational basis for such distinction. Police officers are normally armed at all times, and it is their job to arrest criminals; neither is true of private citizens. Thus the sheer number of possible incidents justifies cautioning the officer. Furthermore, the city, as employer of the officer and a potential codefendant in a suit for wrongful death or injury, has an interest in the officer's conduct which it lacks toward a private citizen. Thus it is reasonable to provide restrictions on the officers' use of firearms. Police officers are constitutionally subjected to many burdens and restrictions that private citizens are not. (See *Kelley* v. *Johnson* (1976) 425 U.S. 238 [47 L.Ed.2d 708, 716, 96 S.Ct. 1440].)" (Pp. 375-376.)

█ Thus it appears, from the foregoing authorities, that the applicable sections of the California Penal Code, as construed by the courts of this state, prohibit the use of deadly force by anyone, including a police officer, against a fleeing felony suspect unless the felony is of the violent variety, i.e., a forcible and atrocious one which threatens death or serious bodily harm, or there are other circumstances which reasonably create a fear of death or serious bodily harm to the officer or to another.

Plaintiffs do not question the constitutionality of pertinent Penal Code provisions but rather confine their attack to the regulations and practices of the Pleasant Hill Police Department. Therefore, if there is no substantial conflict in those regulations with the provisions of the state statutes, then it appears that the former are not invalid. Since plaintiffs concede the constitutionality of the statutes and the construction which the courts have placed thereon, there remains the question of whether there is a substantial conflict in the regulations of the Pleasant Hill Police Department with the requirements of those statutes.

At this juncture, certain basic principles of judicial review come into play. █ For example: a statute which is reasonably susceptible of two constructions should be interpreted so as to render it constitutional. (*San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 942 [92 Cal.Rptr. 309, 479 P.2d 669]; *People* v. *Carr* (1974) 43 Cal.App.3d 441, 445 [117 Cal.Rptr. 714].) The court's duty in interpreting a statute is not limited to avoiding a construction which makes it clearly unconstitutional. It goes further: if possible, the statute must be construed so that

the "constitutional difficulties" will never arise. (*Kramer* v. *Municipal Court* (1975) 49 Cal.App.3d 418 [122 Cal.Rptr. 672].) It is an established principle of statutory construction that when two alternative interpretations are presented, one of which would be unconstitutional and the other constitutional, the court will choose that construction which will uphold the validity of the statute and will be constitutional. (*Estate of Skinker* (1956) 47 Cal.2d 290, 297 [303 P.2d 745], citing *County of Los Angeles* v. *Legg* (1936) 5 Cal.2d 349, 353 [55 P.2d 206].) Municipal ordinances and regulations enacted pursuant thereto are accorded the same treatment: it is the duty of a court to so interpret an ordinance as to render the legislative intent valid and operable. (*In re Maki* (1943) 56 Cal.App.2d 635, 643 [133 P.2d 64].)

 Although the Pleasant Hill Police Department regulations are more detailed in content, it is readily apparent that those sections thereof with which we are here concerned are entirely compatible with the comparable provisions of section 196 of the Penal Code. The language of section 90, subdivision 2(a), of the Pleasant Hill Police Department regulations is exactly the same as contained in the first paragraph of section 835a of the Penal Code. On the basis of the authorities previously cited, however, it is now clear that the word "felony," as used in both the statutes and in the Pleasant Hill Police Department regulations, must be interpreted as referring only to those species of offenses which are somewhat loosely characterized as "violent" felonies. Consequently, the deadly force authorized by such statutes and regulations may be resorted to only if the felony is a "forcible and atrocious one" which threatens death or serious bodily harm or there are other circumstances which reasonably create a fear of death or serious bodily harm to the officer or other person. (*People* v. *Ceballos, supra,* at p. 479.)

We find that the regulations of the Pleasant Hill Police Department conform to the statutory provisions of the California law and are, therefore, neither unconstitutional nor invalid. Accordingly, we conclude that there is no basis for granting plaintiffs the relief sought by their complaint, since defendants' conduct in the application of the regulations here involved must conform to the judicial interpretation of those statutes upon which such regulations are based.

Judgment affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied May 26, 1977.