[Crim. No. 510.   Third Appellate District.—August 17, 1920.]

## THE PEOPLE, Respondent, v. REUBLE C. LATHROP, Appellant.

[1] Criminal Law—Assault With Intent to Commit Murder—Character of Injury Inflicted—Evidence.—In a prosecution for the crime of assault with intent to commit murder, it is proper to show the character of the injury that was actually inflicted as evidence that the defendant intended such consequences.

[2] Id.—Pursuit of Escaping Prisoner—Means Available—Killing in Self-Defense.—While an arresting officer or individual has the right to pursue the escaping prisoner and use whatever force may be necessary for his arrest and detention, and to accomplish this purpose he may use whatever reasonable means are available and may summon as many persons as he deems necessary to assist him, he must stop short of killing or seriously injuring the fleeing criminal, unless in self-defense.

[3] Id.—Arrest for Misdemeanor—Shedding Blood or Shooting to Prevent Escape—Rights of Private Person — Instructions.— In this prosecution for the crime of assault with intent to commit murder, while the instruction "that under section 837 of the Penal Code of the state of California, which permits a private person to arrest another for a public offense committed or attempted in his presence, it is not intended that the private party making the arrest has the right to proceed to the extremity of shedding blood or shooting the offender, in arresting or in preventing the escape of one whom he has arrested for an offense less than a felony, except in self-defense, even though the misdemeanor was committed in the presence of such private person," might have been more explicit upon the question whether the defendant acted with criminal negligence, if he fired the gun merely for the purpose of frightening the prosecuting witness into submission, considered with the other instructions given upon that subject, it could not have been misinterpreted by the jury to the prejudice of the defendant.

[4] Id. — Good Character of Defendant — Reasonable Doubt of Guilt—Evidence—Improper Instruction.—In such a prosecution, a requested instruction, "Good character of the defendant must be considered with all other evidence in the case, and is of itself sufficient fact from which a reasonable doubt of guilt may arise, and if the jury have reasonable doubt of the guilt of the defendant, he is entitled to their verdict of acquittal," is properly refused where the evidence as to the character of the defendant is conflicting.

[5] Id.—Commission of Misdemeanor by Complaining Witness—Admissions—Evidence—Instructions—Error Without Prejudice.—In a prosecution for the crime of assault with intent to commit murder, based upon the shooting of the complaining witness by defendant, while the former was attempting to make his escape from defendant, who had apprehended him for violating the state game laws while trespassing upon defendant's land, the error of the trial court in refusing defendant's requested instructions dealing with the question of the commission of a misdemeanor by the prosecuting witness at the time of his apprehension by defendant, is not prejudicial to the defendant, where there is no controversy at the trial but that the acts of the complaining witness constituted a misdemeanor, it being virtually conceded by all parties that said acts amounted to a violation of the law, and several of the instructions that are given assume that he committed a misdemeanor, and there is no evidence justifying the act of the defendant.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. W. Henderson and Andrew R. Schottky for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Defendant was accused of the crime of assault with intent to commit murder and the jury found him guilty of assault. The court sentenced him to pay a fine of three hundred dollars and to serve a term of three months in the county jail. The appeal is from the judgment and an order denying his motion for a new trial. As stated by appellant, he relies for reversal upon three grounds: "(1) That the court erred in the admission of certain testimony offered by plaintiff and objected to by defendant; (2) That the court misdirected the jury in certain instructions given to the jury at the trial; (3) That the court erred in refusing to give to the jury certain instructions requested by the defendant."

It is not disputed that the evidence is sufficient to support the verdict. It appears without conflict that Soares, the complaining witness, was hunting upon the land of the de-

fendant and was trespassing thereon; that he was discovered by the defendant,. who was not an officer, and that the defendant placed Soares under arrest and took from him a shotgun belonging to said Soares. As to the details of what followed the prosecuting witness and the defendant are not entirely in accord. Soares testified that the defendant "said: 'We will go and see the judge,' and I asked him if he was the sheriff. He said: 'Never mind about that but come on and we will go and see the sheriff.' I said: 'If you was not the sheriff you don't have to take me.' I started to walk a little ways and he went back to the machine and took the gun out and took a step and shot me in the legs." He further testified that Mr. Lathrop was about twenty-five yards away from him at the time, and that the shot was fired from the said gun belonging to Soares. Lathrop testified that Soares started to run away, that the former called to the latter to stop, and upon his failing to do so appellant fired into the ground some eight feet behind Soares to scare him, the theory of appellant being that the shot must have glanced on the hard surface of the ground thus causing the wound.

[1] It is quite apparent that no prejudicial error was committed in the matter to which the first objection is addressed. The effect of that testimony is that Soares was not able to work for "about a month and a half" after he was shot, and that the wounds "bother me sometimes, once in a while they hurt me a little bit." It is the claim of appellant that this testimony "could throw no light upon whether or not the defendant was guilty of the offense charged" and that it had a tendency to excite the sympathy of the jury for the prosecuting witness, and thereby influence the verdict. But we think it was proper to introduce such evidence to show that a "violent injury" was done to the person of Soares. It is true that the charge involved only an *attempt* to commit a violent injury and that the defendant might have been convicted without having consummated such attempt, yet in such cases it is proper to show the character of the injury that was actually inflicted as evidence that the defendant intended such consequences. Besides, the testimony added nothing of substantial import to the testimony of the physician who described the wounds. From that description it would necessarily follow that the

prosecuting witness would suffer considerable pain and would be incapacitated for work for some time. Moreover, the jurors were specifically instructed that "no question of mercy, sentiment or anything else resides with you except the question of whether or not you believe from the evidence, and beyond a reasonable doubt that the defendant is guilty." We must assume that they were sensible men and followed the instructions of the court.

The instruction of which appellant complains was as follows: "You are further instructed that under section 837 of the Penal Code of the state of California, which permits a private person to arrest another for a public offense committed or attempted in his presence, it is not intended that the private party making the arrest has the right to proceed to the extremity of shedding blood or shooting the offender, in arresting or in preventing the escape of one whom he has arrested for an offense less than a felony, except in self defense, even though the misdemeanor be committed in the presence of such private person." The claim of appellant is that this was equivalent to an instruction to the jury that because defendant may have shed the blood of Soares or shot him he was guilty of the offense, whether the defendant intended to shoot him or not. It is asserted that "it was for the jury to determine whether under all of the circumstances the acts of the defendant were unwarranted or unreasonable," and "the defendant was entitled to have the jury consider whether he intended to shoot Soares, or whether he merely fired to frighten Soares and cause him to cease his flight."

The theory of defendant as to the test to be applied to his conduct is more explicitly declared in this instruction given by the court at his request: "That if you believe from the evidence that the defendant arrested the said Soares for the commission of a public offense in the presence of the defendant and the said Soares escaped from the defendant, then the defendant could lawfully and immediately pursue and retake the said Soares at any time and in any place within the state of California.

"That in so pursuing and recapturing the said Soares, the defendant could lawfully perform such acts as are usually and not uncommonly used under similar circumstances in the stopping of arrested persons when fleeing from lawful

arrest. It is for you to determine whether the acts of the defendant were unusual and uncommon among men in the same or similar circumstances. If you believe that such acts as committed by the defendant were not unusual or uncommon under the circumstances, then the defendant was not criminally negligent.''

The criticised instruction was framed by the district attorney to meet the view of the law generally recognized by the authorities that neither an officer nor a private citizen, who has arrested a third party, for a misdemeanor, has the legal right intentionally to seriously injure or to kill the one arrested merely to prevent his escape. The subject is fully considered in a note to *State* v. *Phillips* (Iowa), 67 L. R. A. 292. Therein the doctrine is announced and authorities cited to support it that ''An officer has no right to shoot a person who is merely running away from him without committing any violence, when under arrest, or to avoid arrest for a misdemeanor.'' The rule is declared to be otherwise in case of a felony. It would indeed be abhorrent to the moral sense of every right-thinking citizen to uphold such brutality where the offense involved is so petty as a mere misdemeanor and the arrest is attempted without a warrant. [2] And yet the arresting officer or individual has the right to pursue the escaping prisoner and use whatever force may be necessary for his arrest and detention. (Sec. 835, Pen. Code.) No doubt, to accomplish this purpose he may use whatever reasonable means are available and may summon as many persons as he deems necessary to assist him (sec. 839, Pen. Code), but he must stop short of killing or seriously injuring the fleeing criminal, unless, as before stated, in self-defense.

Our statute does not expressly make this distinction between a misdemeanor and a felony, but it seems to enlarge the authority of an arresting officer where he is in possession of a warrant of arrest. While it recognizes the right in certain cases to make an arrest without a warrant (secs. 836 and 837, Pen. Code), yet in section 843 of said code it provides: ''When the arrest is being made by an officer under the authority of a warrant after information of the intention to make the arrest, if the person to be arrested either *flees* or forcibly resists, the officer may use all *necessary* means to effect the arrest.'' This would undoubtedly

permit an officer with a warrant even to shoot an escaping prisoner if necessary to effect the arrest, but here, of course, we have no such case. If the defendant willfully shot or shed the blood of Soares under the other circumstances disclosed by the evidence, he was guilty of an offense, but if he had no intention of shooting him but fired the gun, as he claimed, merely for the purpose of frightening him into submission, then it is conceded by both parties that his guilt would depend upon the question whether he acted with criminal negligence or according to the standard prescribed in said instruction requested by the defendant.

[3] The criticised instruction might have been more explicit in the respect indicated, but we think the element of *purpose* or *intention* is implied in the language used, and that, considered with the other instructions of the court, it was not misinterpreted by the jury to the prejudice of the defendant. A declaration that one shot or shed the blood of another implies that the act was done with such intent.

[4] There was no error in refusing the following requested instruction: ''Good character of the defendant must be considered with all other evidence in the case, and is of itself sufficient fact from which a reasonable doubt of guilt may arise, and if the jury have reasonable doubt of the guilt of the defendant, he is entitled to their verdict of acquittal.''

It is stated by appellant that ''a number of witnesses testified as to the character of the defendant, some being favorable and some unfavorable.'' This statement justifies the action of the court in refusing said instruction, since it assumed that appellant's good character was established beyond question. The truth is that it was a matter for the jury to determine, and, it may be added, the court on the request of the defendant did give a proper instruction on the subject.

[5] A more serious question in the case arises from the refusal of the court to give any of the following instructions requested by the defendant: ''If you believe from the evidence that the said John Soares, at the time and place when and where the defendant is alleged to have fired the shot, had in his, Soares,' possession, a dying swan which had been shot by the said Soares, then I instruct you that

said Soares was then and there guilty of a misdemeanor under the law.''

"If you believe from the evidence that at the time and place when and where the defendant is alleged to have fired the shot that the said Soares was hunting upon the land or property of the defendant without right or permission of the defendant to hunt thereon, then I charge you that the said Soares was guilty of a misdemeanor under the law."

"If you believe from the evidence that at the time and place when and where the defendant is alleged to have fired the shot that the said Soares was hunting animals or game, other than predatory animals or game, without a legal license so to do from the government of the state of California, I charge you, the said Soares was guilty of a misdemeanor under the law."

The importance of these instructions can be understood when we recall that the evidence shows that Soares was guilty of each of said offenses and that this fact constituted the foundation of appellant's defense. The whole case of defendant, in other words, rested upon these facts, that Soares committed a misdemeanor in his presence; that he had, therefore, a right to arrest and recapture him, and that appellant fired the gun for the purpose of scaring, but without any intention of hitting him. The commission by Soares of a misdemeanor is thus shown to be an important link in the chain, and said instructions covered that particular feature.

However, we do not believe that the case should be reversed for said omission.

In the first place, it is altogether probable that the jurors were sufficiently familiar with the law to know that said acts constituted a misdemeanor. It is fair to assume that in such a farming community a general knowledge exists of the game laws. Again, it was shown without objection that Soares pleaded guilty to said offense and it was admitted by him that he knew he had committed a crime. There was no controversy whatever about it during the trial, and it was virtually conceded by all parties that said acts of Soares amounted to a violation of the law. We may add that several instructions, including the one first quoted herein, assumed that Soares had committed a misdemeanor.

Indeed, the effect could hardly have been more pronounced if the people had expressly admitted that Soares was guilty of a misdemeanor. In such case, of course, an instruction on that subject would have been useless. Any average man would understand from the proceedings that a misdemeanor had been committed by Soares, and while it might be more satisfactory if said instructions had been given, there was no prejudicial error in such refusal. Moreover, there is no evidence in the record of justification of the act of defendant. According to his own statement he manifested such reckless indifference to the welfare of Soares that his conviction of simple assault justly followed. He testified: "I took the gun out of the rear seat of the machine and I saw it was a pump gun; I had not noticed before what it was and I said, 'Stop, or I will shoot'; he did not stop; he kept looking back all the time over his right shoulder; he was running from there; I took a look at the gun and I just pumped her down and threw out a shell and threw in one and I threw the gun to my shoulder and I shot about six or eight feet behind the fugitive, on the ground." To fire a shotgun in a direct line with the fugitive and aiming only a few feet behind him was so likely to produce great bodily injury as to rob this alleged defense of all merit. There was no pretense of any resistance on the part of Soares or that defendant was in any danger of violence, and the mere fact that Soares had committed a misdemeanor and was attempting to escape did not warrant the defendant in thus recklessly exposing Soares to such injury. The humanity of the law requires rather that the fugitive should have been permitted to escape for the time being. There was nothing so urgent about the case as to demand the drastic course pursued by the defendant. ' Other effective and less dangerous means were open to him.

We conclude, therefore, that if said instruction had been given and full force and effect were accorded to defendant's theory that he fired simply to frighten Soares, the jury should and would have found him guilty of simple assault.

We may add that, from the evidence for the people, the jury would be justified in concluding that the defendant fired deliberately at the legs of Soares, but upon this or the

defendant's own theory, that he did not intend to wound him, he has no just cause for complaint at the verdict.

The judgment and order are affirmed.

Nicol, P. J., *pro tem.*, and Hart, J., concurred.