[Crim. No. 28259. Second Dist., Div. Two. Aug. 6, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES CARL WILD, Defendant and Appellant.

COUNSEL

Dudley Gray for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline and Stephen M. Kaufman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FLEMING, Acting P. J.**—Charles Carl Wild was convicted by a jury of involuntary manslaughter. (Pen. Code, § 192, subd. 2.) He appeals the judgment and order granting probation,[1] arguing the insufficiency of the evidence as a matter of law, the need for the People to elect between voluntary and involuntary manslaughter, and the trial court's authority to declare the conviction a misdemeanor.

Under the familiar rule governing appellate review, we view the evidence in the light most favorable to the judgment. Kenneth Wilkens, the 17-year-old decedent, had been drinking alcoholic beverages with Larry Southard on the evening of May 31, 1975, both at appellant's beer bar known as Don's Place and at other beer bars as well. Southard had formerly been employed by appellant, but his employment had been terminated approximately two weeks earlier. Shortly after 2 a.m. Wilkens and Southard left the Chris' Curve Inn and started driving around in Southard's car. About 2:40 a.m. and after Don's Place had closed, Wilkens told Southard to pull over near Don's Place. Southard complied, and Wilkens left the vehicle.

Southard testified that 30 seconds to a minute later appellant approached him, pointed a revolver at him, and said, "Hold it, buddy." About the same time Southard heard the sound of breaking glass from the bar premises, and when appellant moved towards the source of this noise Southard drove away.

Appellant, an ex-Marine (two years service), and the only witness to his encounter with decedent Wilkens, testified he continued to hear glass breaking as he approached the premises and when he turned a corner he saw Wilkens in the act of throwing a rock through one of its windows. Appellant assertedly advised Wilkens he was under arrest and thereafter sought to restrain him when the latter attempted to flee. Two shots were fired from appellant's revolver, a single-action type which requires manual cocking before each firing. Appellant asserted that his revolver, which he always carried, accidentally discharged once during this encounter. However, appellant acknowledged that when Wilkens finally broke free, he pointed the gun at Wilkens' fleeing figure and fired,

---

[1]Probation was granted for a period of two years on the following conditions: Maintain a residence as approved by the probation officer. Obey all laws, orders, rules and regulations of the probation department and of the court. Not own, use or possess a firearm capable of being concealed.

intending to hit him and "disable him." Wilkens was 69 feet away when the bullet struck him in the exact back of the neck and killed him.

The physical evidence at the scene established that Wilkens, prior to being interrupted by appellant, had thrown at least five cinder blocks through the upper sashes of the premises' windows, which contained neon advertising beer signs. None of the lower sashes of the windows was broken, and the shattered upper panes and shattered neon beer signs were five and one-half feet above ground level.

For the defense appellant asserted that the day after Southard's employment ended, Southard came into Don's Place and had a conversation with appellant wherein he stated that he (Southard) could easily burglarize Don's Place and no one could stop him because he had a .38 caliber gun in his car. Don's Place had been burglarized several times before appellant acquired it. Southard came into the bar on the evening of May 31, 1975, caused a minor amount of trouble, and left. Appellant closed the bar and left, but returned to place the next day's "bank" in the bar. Appellant testified he had believed Wilkens and Southard were burglarizing his bar and that he fired the second shot at Wilkens because he feared if the latter reached Southard's departing vehicle he might obtain and use the gun allegedly present therein.

1. ■ In support of his contention that the evidence was insufficient to sustain the judgment, appellant erroneously assumes, as a matter of law, that decedent was engaged in the commission of attempted burglary, a felony, as was the case in *People* v. *Walker,* 32 Cal.App.3d 897 [108 Cal.Rptr. 548]. ■ But ". . . To establish a fact as a matter of law, the state of the record must be such that no other reasonable conclusion is legally deducible from the evidence, and any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal. [Citations.]" (*People* v. *Walker, supra,* at p. 904; *People* v. *Piorkowski,* 41 Cal.App.3d 324, 333 [115 Cal.Rptr. 830].) ■ At bench, the evidence is clearly susceptible to the interpretation that decedent was engaging in what is commonly referred to as malicious mischief, or vandalism, which, when it involves destruction of property valued at less than $1,000, is a misdemeanor (Pen. Code, § 594). Whether he was engaged in the commission of attempted burglary or merely malicious mischief was a jury question. (*People* v. *Piorkowski, supra,* at p. 333.) By returning a verdict of involuntary manslaughter (Pen. Code, § 192, subd. 2), the jury impliedly found the decedent engaged in the latter activity, and substantial evidence support-

ed that implied finding. Burglars do not usually stand in front of a building repeatedly throwing large bricks through its window panes, particularly when those broken window panes would not directly aid them in gaining access to the premises.

"[D]eadly force may be directed toward the arrest of a felon . . . only where the felony committed is one which threatens death or great bodily harm. [Citations.] . . ." (*People* v. *Piorkowski, supra,* at p. 329; see also *People* v. *Ceballos,* 12 Cal.3d 470, 477 et seq. [116 Cal.Rptr. 233, 526 P.2d 241].) A fortiori deadly force may not be directed toward the arrest of a misdemeanant. (See *People* v. *Lathrop,* 49 Cal.App. 63, 67 [192 P. 722].) At bench, we find the evidence sufficient to sustain the judgment.

2. ■ The People were not required to make an' election in the information charging "Manslaughter, in violation of Section 192 Penal Code," between voluntary and involuntary manslaughter. (See *People* v. *Freudenberg,* 121 Cal.App.2d 564, 593 [263 P.2d 875]; *People* v. *Dobbs,* 70 Cal.App.2d 261, 265-266 [161 P.2d 46].) By statutory definition, manslaughter is a single crime which can be committed in a variety of ways. (See Pen. Code, § 192.)

3. ■ "Manslaughter is punishable by imprisonment in the state prison for not exceeding 15 years, except that a violation of subsection 3 of Section 192 of this code is punishable . . ." alternatively as a felony or as a misdemeanor. (Pen. Code, § 193.) Because the manslaughter herein was not committed "in the driving of a vehicle" (Pen. Code, § 192, subd. 3), it is punishable only as a felony. (See Pen. Code, § 17, subd. (a).)

The judgment is affirmed.

Beach, J., concurred.

**COMPTON, J.**—I dissent. In my opinion the judgment is not supported by the evidence.

Penal Code section 197 provides that homicide is justified ". . . 4. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, . . .," and Penal Code section 837 provides "A private person may arrest another: . . . When a felony *has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it.*" (Italics added.)

Neither the Attorney General in his brief nor the majority in its opinion questions the reasonableness of defendant's articulated belief that the deceased had committed a felony. This is because the facts are such that it cannot be argued otherwise.

The People had the burden of proving beyond a reasonable doubt that defendant's attempted arrest of the deceased was not a lawful arrest.[1] If this arrest was lawful under Penal Code section 837, then the homicide was justified under Penal Code section 197. Thus the People were required to prove beyond a reasonable doubt two things (1) that the victim had not in fact committed a felony, and (2) that defendant did not have good reason to believe a felony had been committed.

As noted, under the facts as a matter of law, the People could not prove No. (2) beyond a reasonable doubt. The Attorney General concedes as much when he advances the argument adopted by the majority that the evidence is "susceptible to the interpretation that decedent was engaged in . . . a misdemeanor." This argument is addressed to element No. (1)—the commission of a felony in fact.

I agree that the evidence is susceptible of the inference that decedent was only engaged in vandalism or malicious mischief and it follows that defendant was not entitled as he claims to have the jury instructed that as a matter of law decedent had committed a felony. On the other hand the jury should not have been instructed, as it was, that malicious mischief as a matter of law, was a misdemeanor. Penal Code section 594 (vandalism) as amended in 1974 is either a felony or a misdemeanor depending upon the amount of damage done.

The assertion by the majority that the evidence is susceptible of the interpretation that decedent was only engaged in a misdemeanor, is pregnant with the admission that the evidence is also susceptible of the interpretation that the decedent was at least engaged in the felony of attempted burglary. It cannot be denied that the latter interpretation is an equally reasonable one.

---

[1]Penal Code section 1105 provides: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

Defendant was charged with manslaughter only and the prosecution's evidence tended to show justification, thus Penal Code section 1105 had no application.

In light of the foregoing the majority by finding support for the jury's verdict in the interpretation that decedent was only a misdemeanant places a burden on the defendant which was not properly his.

As I observed earlier the People had the burden of proving beyond a reasonable doubt that decedent was not a felon. The burden was not on defendant to prove the contrary. No amount of generalizing about the habits and psychology of burglars as perceived by the majority can overcome the reasonable doubt which, as a matter of law, inheres in these facts.

Finally, the jury was given the traditional general instruction on reasonable doubt. This was followed by a series of instructions on the general principles of law applicable. The tenor of these instructions, however, tend to convey to a lay jury that defendant somehow had the burden of justifying his conduct. In my opinion the jury should have been specifically instructed that the People were obligated to prove the invalidity of the attempted arrest beyond a reasonable doubt.

I would reverse the judgment.

Appellant's petition for a hearing by the Supreme Court was denied September 29, 1976.