Filed 9/30/16  P. v. Cilluffo CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>THOMAS JOSEPH CILLUFFO,<br><br>        Defendant and Appellant. | A144843<br><br>(Napa County<br>Super. Ct. No. CR171168) |

Thomas Joseph Cilluffo (appellant) appeals from a judgment entered after a jury convicted him of assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)[1]) and found he personally inflicted great bodily injury during the commission of the crime (§ 12022.7, subd. (a)), and the trial court sentenced him to 180 days in county jail and three years of probation.  He contends the court gave erroneous instructions to the jury regarding the burden of proof on his citizen's arrest claim.  We agree the court erred but conclude the error was harmless beyond a reasonable doubt, and affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

An information filed August 14, 2014 charged appellant with battery with serious bodily injury (§ 243, subd. (d)) and assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)).  It also alleged appellant personally inflicted great bodily injury during the commission of both crimes (§ 12022.7, subd. (a)).

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

1

The information was based on an incident that occurred at around midnight on April 27, 2014.  John Spencer—a limousine driver and the owner of an automobile glass shop—was working as a driver for his friend's daughter and her friends on prom night. He dropped off his passengers at an In-N-Out Burger restaurant (In-N-Out) and waited at a McDonald's parking lot next door while they ate.  About 10 or 15 minutes later, appellant, also a limousine driver who was waiting for his prom passengers, pulled up next to Spencer's limousine.  Appellant got out and approached; Spencer rolled down his window thinking appellant "just wanted to have a conversation with me."

Appellant abruptly asked Spencer for his Transportation Charter Party (TCP) number.  When Spencer—who had just started his limousine business and had just received his TCP number—told appellant that he had not yet put the TCP number on his limousine, appellant began asking more questions, including how many passengers he had and whether he recalled the limousine fire that had occurred on the San Mateo bridge.  Spencer tried to explain that he has a TCP number, is fully insured, and knows his passengers, but appellant "just seemed to be getting more and more agitated as the conversation went on."  Appellant called the police and "seemed angry" about the San Mateo incident; Spencer "figure[d]" he was upset about Uber being "a nonlicensed transportation company."  Appellant's behavior made Spencer feel nervous and he thought, "I'd like to get away from this guy."  Spencer walked over to In-N-Out; his passengers said they were ready to leave.  Spencer said "good, because there is a crazy guy over there that I want to get away from."  He walked back to McDonald's to get his limousine.

As Spencer got in his limousine, appellant pulled his limousine "kind of in front" of Spencer's limousine.  As Spencer slowly tried to "crawl around" appellant's limousine, appellant got out of his limousine and stepped in front of Spencer's limousine. Spencer, who had traveled "probably inches" at that point, came to a "dead stop." Appellant then leaned into Spencer's limousine and said, "you hit me."  Spencer, who knew he had not hit Spencer, replied, "no, I didn't."  Spencer felt appellant might have leaned into his limousine just so he could say he was hit.

2

Appellant then came around to the driver's side, entered Spencer's limousine through the open window, and tried to grab the keys. Spencer also tried to get his keys, at which point appellant "grabbed my tie and pulled it around the back of my neck and started pulling on it." Spencer tried to get appellant off of him, "but I'm laying over the back of my console and he is on top of me and he's a pretty big guy so I couldn't push him off of me and . . . so I was having trouble breathing." Spencer put his hands under his tie in an attempt to get some air; appellant said, "I'm going to choke you out."

Unable to get appellant off of him or stop him from choking him, Spencer reached behind and opened the passenger door, hoping they would fall out and separate, giving Spencer a chance to run away. However, as soon as the two fell out, appellant got on top of Spencer's back, with Spencer's stomach and face to the ground. It felt to Spencer like appellant was kneeing him on his back. Appellant again said, "I'm gonna choke you out," as he pulled on Spencer's tie and choked him in a way that made him feel he was going to be choked to death. Spencer came close to losing consciousness and continued to put his hands under his tie in an attempt to catch some air. He did not hit or scratch appellant at any point because appellant had the advantage and seemed to know what he was doing, and Spencer did not want to anger appellant further. Appellant never told Spencer why he was trying to grab the keys or why he was strangling him, and never said he was trying to make a citizen's arrest.

The police and an ambulance arrived at the scene. Spencer's rib cage was sore, his neck had red marks and was sore, and there was some blood coming out of his nose, ear, and thumb. His shirt was torn from the pulling of the tie, his tie was stretched, and his jacket had a hole in it from hitting the asphalt. Medics wanted to take Spencer to the hospital but he declined because he felt he needed to take his passengers home. By the time he was able to go "see the kids the last two were getting picked up by their parents." Spencer rested in bed on Sunday and went to work at his glass shop on Monday, but went to the hospital after being unable to lift some windshields, and learned he had "a couple

3

of broken ribs."[2] The doctor told him to close his shop for six weeks, but because he would be out of business if he did so, he obtained approval to return to work the next day and hired his son to do the heavy lifting for him.

Nathan Meyers was at the McDonald's drive-thru ordering food when he heard yelling coming from two limousines parked next to each other. He approached and saw one driver on top of another inside one of the limousines. The driver on top was hitting the other driver, who was on his back against the seats. Meyers tried to get help to break up the fight, but when he could not find anyone, he parked his car and went back to the limousines. At this point, the hitter had the other driver face down on the ground, was kneeing the other driver's back, and was choking him with his tie. The driver being choked was trying to push the hitter away and was screaming, "help me, get this guy off me." The hitter said, "I'm a police officer, this is my number, call this number, this is dispatch, I've already called them, they're already on their way, you can call and check on them." Meyers never saw the other driver scratch, punch, or curse at the hitter; rather, he was saying, "help me, help me," as he tried to "push the other limo driver away from him." Meyers was unable to identify the hitter at trial.

Napa Police Officer Kevin Skillings testified that when he arrived at the scene, he saw appellant and Spencer on the ground next to two limousines. Appellant was straddling Spencer, who was face down on his stomach, and was pulling Spencer's tie up. Spencer's face was red and he looked scared, worried, and as if he were struggling, as he moved his legs up and down. It appeared to Skillings that Spencer was in danger. Appellant—who had each of his legs on each side of Spencer, his left hand near Spencer's back shoulder blade, and his right hand pulling up on Spencer's tie—yelled out that he was placing Spencer under citizen's arrest for assault with a deadly weapon.

---

[2]The treating doctor testified that Spencer had one rib that was "definitively" fractured, and two additional ribs that appeared to be fractured. The injuries were consistent with what Spencer had testified he had been through, e.g., having a knee placed to his back while being strangled.

Skillings told appellant to get off of Spencer. Skillings saw blood coming from Spencer's left ear and right thumb. He did not notice any injuries to appellant.

Appellant testified he called the police when he noticed Spencer's limousine did not have a TCP displayed, because he was concerned for the well-being of Spencer's passengers. He acknowledged he moved his limousine in front of Spencer's limousine while Spencer was at In-N-Out getting his passengers, but denied he did so in order to block Spencer from leaving the area. He said that at that point, he did not care whether Spencer stayed or left. When Spencer tried to drive out of the parking lot, he attempted to get out of the way, but Spencer drove straight at him at approximately 15 miles per hour. In order to avoid getting pinned between the two limousines, appellant jumped in front of Spencer's car and was struck on his right leg and hip while Spencer was driving at approximately 10 to 15 miles per hour.

Appellant fell to the ground and Spencer stopped, backed up, and tried to drive away. Appellant got up and ran to Spencer's window and said, "You've hit me, you've hit me. Stop your car, you've hit me." He then reached inside Spencer's limousine, put it in park, and tried to grab the keys. A struggle ensued, with Spencer inside his limousine and appellant still outside the limousine. Spencer hit appellant "several times," punched him "hard" in the face, and kicked him. Spencer then restarted his limousine, and appellant tried to shut it off. Spencer punched appellant again, and appellant's whole body went inside the limousine. Appellant told Spencer to "quit assaulting me" but Spencer continued to punch and kick him hard to the shoulder, chest, and head. Appellant put Spencer in a "submission hold" by putting his arm around Spencer's neck. Spencer tried to bite appellant, so appellant told him he was going to "choke him out."

Appellant told Spencer he would "let up if he would just relax." Spencer relaxed but "then reached up and grabbed my eye and started scratching." Appellant put more pressure on the submission hold until Spencer stopped, and instructed Spencer to open the passenger door. Spencer complied, and the two slid out of the limousine onto the ground. Appellant was now "standing over" Spencer and "had him laying face down." Appellant denied choking Spencer with his tie, kneeing him on his back, or sitting on top

5

of him while pulling his tie up. Appellant denied telling a witness that he was a police officer; rather, he told the witness to call police and said he was placing Spencer under citizen's arrest for striking him with his limousine. When police arrived, appellant explained he was placing Spencer under citizen's arrest for assault with a deadly weapon because Spencer hit him with his limousine. Appellant did not seek medical attention that night or at any time thereafter.

Appellant completed "basic" Peace Officer Standards and Training (POST) in 1990. Although POST does not certify bodyguards, the website for appellant's limousine company indicates he is a POST-certified bodyguard. Appellant stated the website incorrectly stated he was a POST-certified bodyguard because his information technology department had made a typographical error.

After the trial court granted the prosecution's motion to dismiss the battery charge, a jury found appellant guilty of assault by means likely to produce great bodily injury and found he personally inflicted great bodily injury during the commission of the offense. At sentencing, defense counsel indicated it agreed with probation's recommendation for 180 days in jail and probation, noting the many letters of support appellant had received, and the fact that there was no premeditation, planning, or sophistication in the way the crime was committed. The prosecutor argued 270 days of jail time was appropriate, stating appellant "lied to this Court and . . . to Probation," and noting that his criminal history included diversions on several offenses and a 1991 conviction for "impersonating a police officer, which is very similar to this." The court sentenced appellant to 180 days in county jail and three years of formal probation.

## DISCUSSION

### A. Background

Before closing arguments, the trial court instructed the jury on the charged offense, then on appellant's citizen's arrest claim, stating: "In the claim of executing a citizen's arrest Mr. Spencer is accused of assault with a deadly weapon other than a firearm. To prove that Mr. Spencer is guilty of this crime the defendant must prove beyond a reasonable doubt, one, Mr. Spencer did an act with a deadly weapon other than

6

a firearm that by its nature would directly and probably result in the application of force to a person; two, Mr. Spencer did that act willfully; three, when Mr. Spencer acted he was aware of the facts that would lead a reasonable person to realize that the act by its nature would directly and probably result in the application of force to someone; and, four, when Mr. Spencer acted he had the present ability to apply force with a deadly weapon other than a firearm to a person." The court instructed the jury regarding the various terms including "willfully," "application of force," and "deadly weapon other than a firearm." The court then returned to the charged offense, instructing on the lesser included crime of simple assault and the great bodily injury enhancement.

The trial court then read a special instruction on citizen's arrest drafted by the prosecutor and agreed to by the defense: "A private person may arrest another person when a felony has been committed and he has reasonable cause for believing the person arrested to have committed it." "The defendant has the burden of proving beyond a reasonable doubt that he was making a lawful arrest for . . . assault with force likely to produce great bodily injury, and that the defendant did not use unreasonable or excessive force when making the lawful arrest. The crime which the defendant was arresting Mr. Spencer for is specified in the jury instruction. I just read it to you and you must find that Mr. Spencer committed all the elements in the instruction. Otherwise the arrest was unlawful. [¶] The defendant had no right to arrest Mr. Spencer for driving illegally. Whether Mr. Spencer was licensed or not has no bearing on your deliberations as to whether defendant was justified in arresting him. [¶] There is a stipulation that whether Mr. Spencer was licensed or not is no grounds for a citizen's arrest."

The trial court continued: "Where the arrest is lawful the person being arrested has a duty to remain passive and any force used by him in resisting is assault. In that event, the person effecting the arrest may use such force as is reasonably necessary to accomplish the arrest and defend himself. However, if the arrest is unlawful, a private citizen is not entitled to use any force to arrest that person. [¶] A private person may not use unreasonable or excessive force to effectuate that arrest. . . [¶] A private person making a lawful arrest is acting lawfully if the force and means used are such as would be

7

considered necessary by an ordinary reasonable person placed in the same position. And if proper that standpoint of such a reasonable person the force and means used was apparently necessary. However, if the arrest was unlawful a private citizen is not entitled to use any force to arrest that person. [¶] If the private citizen uses unreasonable force while re[s]t[r]aining a person, that person may lawfully use reasonable force to defend him[self]. If the arrest is unlawful or a private citizen uses unreasonable force while restraining a person, the person has a right to use reasonable force to defend himself."

During closing arguments, both the prosecutor and defense counsel's arguments reflected their understanding that it was appellant's burden to prove the citizen's arrest claim beyond a reasonable doubt. The prosecutor focused on appellant's improbable testimony and impeached his credibility, and argued he inflicted great bodily injury on Spencer by breaking Spencer's ribs. Defense counsel argued appellant was performing a citizen's arrest and that the force used in effectuating the arrest was reasonable.

### B. Contention

Appellant contends the trial court erred in instructing the jury that he had the burden of proving his citizen's arrest claim beyond a reasonable doubt. The Attorney General concedes this was error, and we agree that it was.

A private person may conduct a citizen's arrest of another person "1. For a public offense committed or attempted in his presence. [¶] 2. When the person arrested has committed a felony, although not in his presence. [¶] 3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it." (§ 837.) Where a defendant makes a citizen's arrest claim, it is the prosecution's burden to prove beyond a reasonable doubt that the defendant was not making a lawful citizen's arrest. (CALCRIM No. 1226; *People v. Agnew* (1940) 16 Cal.2d 655, 661, 666 [trial court erred in instructing the jury that the defendant, who was making a citizen's arrest claim, had the burden of proving the victim committed the offense].) Accordingly, the trial court erred in instructing the jury that appellant had the burden of proving Spencer committed assault with a deadly weapon. Although defense counsel did not object to the citizen's arrest instructions, the claim was not forfeited

8

because the error affected appellant's substantial rights. (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574.)

We conclude, however, that the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Loggins* (1972) 23 Cal.App.3d 597, 605 [reviewing claim of improper burden shifting under *Chapman* standard]; *People v. Flood* (1998) 18 Cal.4th 470, 503, 504, 507 [instructional error is harmless if "it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict," as the "central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence"].) As the trial court properly instructed the jury,[3] a person making a citizen's arrest for a legitimate reason is nevertheless prohibited from using more force than is reasonably necessary to effectuate the arrest. (*People v. Fosselman* (1983) 33 Cal.3d 572, 579; *People v. Piorkowski* (1974) 41 Cal.App.3d 324, 330; § 835; CALCRIM No. 3470 [reasonable force is "that amount of force that a reasonable person would believe is necessary in the same situation"]; *People v. White* (1980) 101 Cal.App.3d 161, 167 ["an arrest made with excessive force is . . . unlawful"]; accord, *People v. Castain* (1981) 122 Cal.App.3d 138, 145.) Thus, the prosecution, which had the burden to prove appellant was not making a lawful citizen's arrest, had to prove that appellant was not justified in arresting Spencer because Spencer did not hit appellant with his limousine, or that if appellant was justified in arresting Spencer, the arrest was nevertheless unlawful because he used excessive force in effecting the arrest.

Here, the jury found beyond a reasonable doubt that appellant committed assault by means likely to produce great bodily injury, and that appellant personally inflicted great bodily injury on Spencer. Through this finding, the jury determined that appellant caused Spencer "significant or substantial physical injury"—"injury that is greater than minor or moderate harm." (CALCRIM No. 3160; § 12022.7, subd. (f).) There was ample evidence to support these findings, as it was undisputed that appellant went inside

---

[3]As noted, the court instructed: "A private person making a lawful arrest is acting lawfully if the force and means used are such as would be considered necessary by an ordinary reasonable person placed in the same position."

9

Spencer's limousine, put his arm around Spencer's neck, told him he was going to "choke [him] out," went on top of Spencer, with Spencer's face and stomach to the asphalt, and caused Spencer to break at least one rib. Further, although appellant denied doing so, there was witness testimony as well as objective evidence—e.g., marks around Spencer's neck, a stretched out tie, ripped shirt, blood coming from various parts of his body—that appellant harmed Spencer in other ways, including choking him with his tie.

A person conducting a citizen's arrest "must stop short of killing or seriously injuring the fleeing criminal, unless . . . in self defense." (*People v. Lathrop* (1920) 49 Cal.App. 63, 67.) Here, there was little to no evidence that appellant's life was in danger such that it was necessary for him to inflict great bodily injury on Spencer in order to effectuate the arrest. There was no evidence that Spencer possessed any weapons, and there was no objective evidence supporting appellant's testimony that Spencer sped straight at him at 15 miles per hour and hit him while going at around 10 or 15 miles per hour. In fact, he testified that immediately after he was allegedly hit, he was able to run over and reach into the limousine to grab the keys. He did not seek any medical attention for any injuries. A neutral third party witness and a police officer who later arrived at the scene corroborated Spencer's testimony that Spencer lay there helplessly on the ground and did not hit, scratch, or fight appellant in any way. Even appellant did not assert that Spencer was at all aggressive or violent once the two of them were on the ground. In light of the evidence presented at trial, and the jury's findings regarding great bodily injury, we are satisfied that no reasonable jury would have found that the force appellant used in conducting the citizen's arrest was reasonably necessary under the circumstances. Accordingly, appellant's citizen's arrest claim would not have been a defense to the charges against him, and the instructional error was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.

_____
McGuiness, P.J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.